IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LUCINDA HOGUE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-14-1242-STE |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for child disability insurance benefits and supplemental security income under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

I. **PROCEDURAL BACKGROUND**

Plaintiff's applications for child disability insurance benefits and supplemental security income were denied initially and on reconsideration. Following a hearing, an

Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 11-26). The Appeals Council denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520; 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 18, 2011, the alleged disability onset date. (TR. 14). At step two, the ALJ determined that Plaintiff had severe impairments of expressive language disorder, learning disability, and dysthymia. (TR. 14). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 16).

At step four, the ALJ found that Plaintiff had no past relevant work. (TR. 23). The ALJ further found Plaintiff had the residual functional capacity (RFC) to "[U]nderstand, remember, and follow simple repetitive instructions for one and two-step tasks, but [could] not follow written instructions." (TR. 18).

Based on the finding that Plaintiff had no past relevant work, the ALJ proceeded to step five. There, he presented the limitations from the RFC to a vocational expert (VE) to determine whether there were other jobs Plaintiff could perform. (TR. 56-57). Given the limitations, the VE identified three jobs from the Dictionary of Occupational

Titles (DOT). (TR. 57-58). The ALJ adopted the testimony of the VE and concluded that Ms. Hogue was not disabled based on her ability to perform the identified jobs. (TR. 25-26).

## III. ISSUES PRESENTED

On appeal, Plaintiff alleges: (1) a failure to incorporate work-related mental limitations in the RFC which necessarily impacted the hypothetical question to the VE and the ALJ's reliance on the VE's testimony, (2) a lack of substantial evidence to support the ALJ's decision in light of testimony rendered by the VE and a medical expert, and (3) a failure to properly evaluate a statement from Ms. Hogue's mother.

## IV. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms the evidence upon which the ALJ relied, or if there is a mere scintilla of evidence supporting the decision. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order

to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

**V.    NO ERROR IN THE RFC DETERMINATION OR HYPOTHETICAL QUESTION**

Plaintiff alleges that the RFC failed to reflect specific work-related mental limitations which various doctors had found to exist. (ECF No. 14:3-7). As a result, Ms. Hogue also alleges that the VE's testimony lacks substantial evidence, as it was based on the allegedly faulty RFC. The Court rejects these arguments.

**A.    ALJ's Duty in Evaluating Medical Opinions and Assessing the RFC**

In evaluating medical opinions, the ALJ must consider the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to

support or contradict the opinion. 20 C.F.R §§ 404.1527, 416.927. Generally, more weight is given to a medical source who has examined a claimant over a non-examining source. 20 C.F.R. §§ 404.1927(c)(1); 416.927(c)(1).

In assessing the RFC, the ALJ has a duty to express the claimant's mental limitations in terms of the specific, work-related activities he or she is able to perform. *See* Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, Westlaw op. at 6-7 (July 2, 1996) (SSR 96-8p).

### B. Evidence Concerning Plaintiff's Mental Impairments

Non-examining State Agency consultant Dr. Joy Kelley completed two reports in her review of Plaintiff's medical records. In the Psychiatric Review Technique (PRT) form, Dr. Kelley concluded that Plaintiff was "moderately" limited in the areas of maintaining social functioning and maintaining concentration, persistence, and pace. (TR. 328). In the Mental Residual Functional Capacity Assessment (MRFCA), Dr. Kelley made three distinct findings of "marked" work-related limitations. In the area of "Understanding and Memory," Dr. Kelley stated that Plaintiff was markedly limited in her ability to understand and remember detailed instructions. (TR. 332). In the area of "Sustained Concentration and Persistence," Dr. Kelley stated that Plaintiff was markedly limited in her ability to carry out detailed instructions. (TR. 332). Finally, in the area of "Social Interaction," Dr. Kelley found a marked limitation in Ms. Hogue's ability to interact appropriately with the general public. (TR. 333).

State Agency psychologist Dr. R. Keith Green examined Ms. Hogue and concluded that she was not limited in her ability to interact with the public. (TR. 346).

### C. No Error in the RFC Assessment or Reliance on VE Testimony

The ALJ discussed Dr. Kelley's opinion and incorporated a portion of her findings into the RFC. (TR. 21). The ALJ accepted Dr. Kelley's opinions concerning Ms. Hogue's marked limitations in her abilities to understand, remember, and carry out detailed instructions. (TR. 18, 21). But the ALJ rejected Dr. Kelley's opinion concerning Ms. Hogue's marked ability to deal with the general public. (TR. 18, 21). Instead, the ALJ adopted Dr. Green's opinion which stated that Ms. Hogue had no limitation in her ability to deal with the general public. (TR. 21, 346). In doing so, the ALJ explained:

> The domain area of social interaction reflects no more than mild limitation. The claimant gets along well with her friends, neighbors, and family. She had no difficulty with social interaction throughout her high school career. With the modification of mild social limitation based on the overall longitudinal record, including a post-hearing mental status examination, these findings and assessments have been given substantial weight and . . . have been incorporated into the determination of the claimant's residual functional capacity.

(TR. 21).

As stated, the RFC limited Plaintiff to performing jobs with the ability to "understand, remember, and follow simple, repetitive instructions for one and two-step tasks," with no ability to follow written instructions. (TR. 18). The ALJ related this information in a hypothetical question to the VE and asked him if an individual with those limitations could perform any work. (TR. 56-57). The VE answered affirmatively and identified three potential jobs. (TR. 57-58). According to the VE, the Plaintiff could work as

a cafeteria attendant, DOT 311.677-010, an office cleaner, DOT 323.687-014, or an usher, DOT 344.677-014. (TR. 57-58).

Ms. Hogue argues that the RFC did not reflect Dr. Kelley's findings regarding: (1) moderate limitations in the areas of "social functioning" and "concentration, persistence, and pace, (2) marked limitations in the abilities to understand, remember, and carry out detailed instructions, and (3) marked limitations in the ability to interact appropriately with the general public. (ECF No. 14:4-7). The Court rejects Plaintiff's argument.

First, Dr. Kelley's findings that Ms. Hogue was moderately limited in the areas of "social functioning" and "concentration, persistence, and pace" were opinions expressed on the PRT form. (TR. 469). The PRT findings are used to assess mental impairments at steps two and three of the sequential evaluation process. SSR 96-8p, Westlaw op. at 4. But the PRT is "not an RFC assessment." *Id.* Thus, the Court rejects Plaintiff's allegations regarding the ALJ's treatment of this portion of Dr. Kelley's opinion. *See Bales v. Colvin*, 576 Fed. Appx. 792, 798 (10th Cir. Aug. 15, 2014) (unpublished op.) ("[T]he ALJ's finding of a moderate limitation. . . .does not necessarily translate to a work-related functional limitation for purposes of the RFC assessment. . . .").

Plaintiff's remaining argument concerns Dr. Kelley's findings of marked impairments in Ms. Hogue's abilities to understand, remember, and carry out detailed instructions and her ability to interact appropriately with the general public. In support, Plaintiff relies heavily on *Jaramillo v. Colvin*, 576 Fed. Appx. 870 (10th Cir. Aug. 27, 2014) (unpublished op.). But *Jamarillo* is not applicable here.

In *Jamarillo*, a psychiatrist opined that the plaintiff was moderately limited in his ability to "carry out instructions." *Id.* at 872. The ALJ afforded the psychiatrist's opinion "great weight." *Id.* at 873. In the RFC, the ALJ stated that the plaintiff was limited to performing simple, routine, repetitive, and unskilled tasks. *Id.* at 872. The ALJ then proffered these RFC limitations in a hypothetical question to a VE, who identified jobs the plaintiff could perform. *Id.* at 874.

The plaintiff's challenge hinged on a distinction between work-related skills and mental functions. *Id.* According to the plaintiff, the ALJ had a duty to expressly discuss work-related skills in the RFC and not simply identify a claimant's level of mental functioning. *Id.* at 874-75. The plaintiff alleged that the ALJ had failed in this regard, and had instead only identified a level of mental functioning when he limited the plaintiff to "simple, routine, repetitive, and unskilled tasks." *Id.* at 875. The Tenth Circuit agreed.

In doing so, the Court explained that the limitations to "simple, routine, repetitive, and unskilled tasks" addressed only the plaintiff's level of mental functioning, but failed to reflect the actual work-related abilities which had been deemed moderately impaired. The Court stated:

> The limitation to simple, routine, repetitive, and unskilled tasks the ALJ included in his hypothetical to the VE did not clearly relate the moderate impairments [the psychiatrist] found. Rather the ALJ was required to express those impairments in 'terms of work related functions'. . . As a result, the ALJ's reliance on the jobs the VE identified in the response to the hypothetical was not supported by substantial evidence.

*Id.* at 876 (citation omitted). *Jamarillo v. Colvin* is not applicable in the instant case.

Here, Dr. Kelley found marked difficulties in Ms. Hogue's ability to understand, remember, and carry out detailed instructions, and interact appropriately with the general public. (TR. 332, 333). The ALJ adopted some of Dr. Kelley's opinions, and assessed an RFC which stated that Ms. Hogue could "understand, remember, and follow simple repetitive instructions for one and two-step tasks, but [could] not follow written instructions." (TR. 18). *Jamarillo* is distinguishable from the instant case in two ways.

First, the Court in *Jamarillo* held that the RFC had merely reflected the claimant's mental abilities, without specifying distinct work-related abilities or limitations. *Jaramillo v. Colvin*, 576 Fed. Appx. at 875-76. But here, the ALJ's decision reflected specific work-related abilities and limitations. The RFC allowed work which required the abilities to understand remember, and follow simple repetitive instructions for one and two-step tasks, but prevented work which required written instructions. (TR. 18).

Second the Court in *Jamarillo* found that the ALJ's limitation to unskilled work naturally encompassed the ability to "understand, carry out, and perform simple instructions," and that the RFC conflicted with the psychiatrist's opinion that the plaintiff was moderately limited in his ability to carry out instructions. But *Jamarillo* does not indicate whether the plaintiff was moderately impaired in his ability to perform work with detailed versus complex instructions, only that the impairment existed.

In the instant case, the distinction exists and is material. Dr. Kelley had opined that Ms. Hogue was markedly limited in her ability to understand, remember, and carry out *detailed* instructions. The ALJ accorded the opinion "substantial weight" and it was

9

adequately reflected in the RFC assessment which limited Plaintiff's work to duties involving the ability to understand, remember, and follow *simple* repetitive instructions for one and two-step tasks.

The ALJ fulfilled his duty to express the RFC in terms of specific work-related functions and no conflict existed with Dr. Kelley's opinion regarding the marked impairments in the areas of Plaintiff's abilities to understand, remember, and carry out detailed instructions. Accordingly, regarding these impairments, the Court rejects Plaintiff's reliance on *Jamarillo v. Colvin* and concludes that the RFC was proper. *See Strobel v. Astrue*, 2011 WL 2135560 (W.D. Okla. May 31, 2011) (unpublished op.) (no error in the RFC assessment limiting plaintiff to "simple and some complex tasks" in light of opinion that the plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions).

The remaining argument concerns Dr. Kelley's opinion that Ms. Hogue was markedly limited in her ability to interact appropriately with the general public. The RFC did not reflect the opinion, but no error exists. The ALJ rejected this portion of Dr. Kelley's opinion in favor of a conflicting opinion from Dr. Green who stated that Plaintiff had no limitation in her ability to interact with the general public. (TR. 21, 346). In doing so, the ALJ considered the appropriate factors and explained his reasoning. *See* 20 C.F.R. §§ 404.1527, 416.927; (TR. 21). The ALJ simply afforded more weight to Dr. Green's opinion, as he was an examining source, while Dr. Kelley was not. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). Accordingly, no error exists in this regard.

Finally, Ms. Hogue argues that the deficiency in the RFC affected the resulting hypothetical question to the VE. As a result, Ms. Hogue argues there is a lack of substantial evidence to support the ALJ's reliance on the VE's testimony regarding the three jobs. Plaintiff is incorrect.

A hypothetical question need only reflect the impairments borne out by the record. *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995). As discussed, a portion of the opinions from Dr. Kelley and Dr. Green were adequately reflected in the RFC, thus forming a proper basis for the hypothetical question. *See Carver v. Colvin*, 600 Fed. Appx. 616, 621 (10th Cir. Jan. 20, 2015) (unpublished op.) (no error in the hypothetical question to the VE which reflected RFC limitations deemed sufficient).

Assuming, however, that Plaintiff accepted the RFC assessment as sufficient, Ms. Hogue specifically alleges that the limitations in the RFC do not correlate with the specific job requirements as set forth in the DOT. The Court agrees regarding the job listings of cafeteria attendant and usher, but no conflict exists with the office cleaner position and reliance on that job is sufficient.

The jobs of cafeteria attendant and usher require reasoning level two--the ability to "apply common sense understanding to carry out detailed but uninvolved written or oral instructions." Compare DOT 311.677-010 (cafeteria attendant), DOT 344.677-014 (usher) to DOT Appendix C: Components of the Definition Trailer (definition of reasoning level two). Reasoning level two conflicts with the RFC which stated that

Plaintiff could only "understand, remember, and follow simple repetitive instructions for one and two-step tasks[.]" (TR. 18).

Regarding the job of office cleaner, Ms. Hogue argues that it "requires the worker to 'apply common sense understanding to carry out instructions furnished in written, oral, and diagrammatic form.'" (ECF No. 14:7). According to the Plaintiff, this requirement conflicts with the RFC for her inability to follow written instructions. The reasoning level Ms. Hogue quotes is reasoning level three which does conflict with the inability to follow written instructions. But the office cleaner job requires only reasoning level one --the ability to "apply common sense understanding to carry out simple one- or two-step instructions *See* DOT 323.687-014; DOT Appendix C: Components of the Definition Trailer. There is no conflict between reasoning level one and Ms. Hogue's RFC. Thus, the ALJ's reliance on the job provides substantial evidence at step five. *See Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (a single job which existed in significant numbers in the national economy provided substantial evidence at step five).

## VI. NO ERROR IN THE CONSIDERATION OF EXPERT TESTIMONY

At the hearing, the VE and a medical expert (ME) testified. Ms. Hogue alleges that the ALJ failed to properly credit the testimony which rendered the decision lacking in substantial evidence. The Court rejects Plaintiff's claim.

Plaintiff focuses on expert testimony concerning whether Ms. Hogue may need a job coach in the initial phases of any future employment. At the hearing, the ALJ asked the ME regarding the level of job supervision Plaintiff might require. (TR. 41). The ME

replied that initially, Ms. Hogue would need a supportive environment and training and support, but that later, she might be able to function fairly well independently. (TR. 41). Plaintiff's attorney asked whether the ME was referring to the need for a job coach. (TR. 41-42). The ME affirmed that was the case, "to just learn basic skills, how to ask questions and assert [her]self, how to do the work task." (TR. 42).

Next, Plaintiff's attorney asked the VE what her recommendations would be regarding the necessity of a job coach for a person with Ms. Hogue's intellectual capabilities as outlined in the record and adopted by the ALJ. (TR. 18, 57-63, 314-16). The VE stated that Ms. Hogue had the "abilities to function in a very simple, repetitive job where there's no variability of tasks." (TR. 61). The VE further stated the jobs she identified were simple, without complex instructions, that should be able to be performed by a person with the ability to follow verbal instructions and a short, visual demonstration of the job. (TR. 62). When Ms. Hogue's attorney further pressed about the need for a job coach, the VE stated that that if the hypothetical person could not maintain the simple, unskilled jobs, she would find out why, and proceed with a job coach if necessary. (TR. 62-63).

According to Ms. Hogue, the experts testified that she would not be able to engage in competitive employment based on her need for "supported employment" and having never been previously employed. The Court rejects the arguments for two reasons.

First, the ALJ acknowledged the ME's statement that Plaintiff would need "training and support," perhaps in the form of a job coach. (TR. 22, 41-42). But the ME never stated that the need for a job coach would preclude all employment. And the VE testified that a job coach *might* be needed if a hypothetical person with Plaintiff's intellectual abilities were unable to perform the simple, unskilled jobs she had identified. (TR. 62-63). She did not, however, testify that Ms. Hogue *required* a job coach or that such assistance would preclude all employment.

Second, Plaintiff argues that Ms. Hogue's lack of previous employment would prevent her from obtaining a job. (ECF No 14:8). Ms. Hogue is incorrect. *See generally Bussell v. Astrue*, 463 Fed. Appx 779, 2012 WL 718995 (10th Cir. Mar. 7, 2012) (unpublished op.); *Gallegos v. Barnhart*, 99 Fed. Appx 222, 2004 WL 1203031 (affirming ALJ's reliance on specific jobs identified by a VE despite evidence that the plaintiff had never worked).

### VII. NO ERROR IN THE CONSIDERATION OF "OTHER SOURCE" EVIDENCE

Plaintiff alleges error in the evaluation of a third-party statement from her mother, Debra Hogue. The Court rejects the argument, because the ALJ properly considered the statement, explained the weight it was given, and provided adequate reasoning.

#### A. ALJ's Duty to Consider Evidence from "Other Sources"

Tenth Circuit law and Social Security Ruling 06-3p state that the ALJ must consider evidence from "other sources," including parents, who do not qualify as

"acceptable medical sources." *Blea v. Barnhart*, 466 F.3d 903, 914-15 (10th Cir. 2006); Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies, 2006 WL 2329939, Westlaw op at 4, 6 (SSR 06-3p). Information from these sources cannot establish the existence of a medically determinable impairment, but may provide insight into the severity of an impairment and how it may affect the individual's ability to function. SSR-06-3p, 2006 WL 2329939, Westlaw op. at 2.

In evaluating "other source" evidence, the ALJ must consider "the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." *Id.*, Westlaw op. at 6. Finally, the ALJ should explain the weight given to the "other source," or otherwise ensure that the decision allows a reviewing party to follow the adjudicator's reasoning. *Id.*

### B. No Error in the Consideration of a Statement from Ms. Houge's Mother

As part of Plaintiff's written application for benefits, Ms. Hogue's mother submitted a third-party functional report concerning Plaintiff. (TR. 246-53). Under the "personal care" section of the report, Ms. Hogue stated that she had to comb Plaintiff's hair and remind her to take a bath and change her clothes. (TR. 247-48, 253). In the decision, the ALJ discussed the report at length, stating:

> The claimant's mother, Debra Ann Hogue, completed a third party adult function report date April 8, 2011. This report does not establish that the claimant is disabled. Since Ms. Hogue is not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or the frequency or intensity of unusual moods or mannerisms, the accuracy of the report is questionable. Moreover, by virtue of the relationship as the mother of the claimant, she cannot be considered a disinterested third party whose reporting would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges. Most importantly, significant weight cannot be given to the report because it is simply not consistent with the preponderance of the opinions and observations by medical doctors in this case.

(TR. 23) (internal citation omitted).

Ms. Hogue outlines the factors an ALJ must apply when considering medical opinion evidence. Compare ECF No. 14:10 to 20 C.F.R. §§ 404.1527(c); 416.927(c). Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions. 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2). Plaintiff then argues that the ALJ failed to consider "the degree to which 'the acceptable medical source' presents an explanation and relevant evidence to support an opinion, . . . [h]ow consistent the medical opinion is with the record as a whole, . . . and [a]ny other factors . . ." (ECF No. 14:10). But the statement from Ms. Hogue's mother was not a medical opinion from an acceptable medical source, thus the factors urged by Ms. Hogue do not apply.

Instead, the ALJ must consider the evidence, explain the weight given, and provide an adequate rationale. The ALJ fulfilled this duty, explaining that he was not giving the statement significant weight because Plaintiff's mother was not medically trained, could not be considered a disinterested party, and the statement was not consistent with the preponderance of the evidence. (TR. 23). The ALJ fulfilled his duty in evaluating "other source" evidence and the Court rejects Ms. Hogue's related claim. *See Croley v. Colvin*, 2013 WL 615564, Westlaw op. at 5-8 (10th Cir. Feb. 19, 2013) (unpublished op.) (affirming ALJ's giving "little weight" to third party function report completed by plaintiff's mother because it was a lay opinion not based on medical evidence, it was based on family loyalties, and it did not outweigh the other medical evidence).

## ORDER

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge **AFFIRMS** the Commissioner's decision.

**ENTERED** on January 25, 2016.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE